UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN MARTINEZ PEDRAZA, | Case No. CV 14-2932 JC |
| Petitioner, | MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING ACTION |
| v . | |
| M. BITER, | |
| Respondent. | |

## I.   SUMMARY

On April 16, 2014, petitioner, who is in state custody and is proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"), challenging a criminal judgment in Los Angeles County Superior Court on multiple grounds.

On July 18, 2014, respondent filed an Answer ("Answer") and lodged multiple documents ("Lodged Doc."), including the Clerk's Transcript ("CT"), and the Reporter's Transcript ("RT").  On August 14, 2015, petitioner filed a Traverse ("Traverse").

The parties have consented to proceed before the undersigned United States Magistrate Judge.

For the reasons explained below, the Petition is denied and this action is dismissed with prejudice.

## II.   PROCEDURAL HISTORY

On February 3, 2012, a Los Angeles County Superior Court jury found petitioner guilty of murder (count 1), vandalism causing damage in the amount of $400 or more (count 2), and hit and run driving (counts 3 & 4). (CT 127-30). The jury also found that the murder was willful, deliberate, and premeditated, that it constituted murder in the first degree, and that petitioner personally used a deadly and dangerous weapon in the commission thereof. (CT 127). Petitioner waived his right to trial on prior conviction allegations and on January 6, 2011, admitted such allegations. (CT 136, 138). Also on January 6, 2011, the trial court sentenced petitioner to a total of thirty years to life in state prison. (CT 138-43).

On February 4, 2013, the California Court of Appeal affirmed the judgment. (Lodged Doc. 7). On April 10, 2013, the California Supreme Court denied petitioner's petition for review. (Lodged Doc. 9).

## III.   FACTS

Since petitioner challenges the sufficiency of the evidence, the Court has independently reviewed the state court record. <u>See</u> <u>Jones v. Wood</u>, 114 F.3d 1002, 1008 (9th Cir. 1997). Based on its independent review of the record, the Court adopts the following factual summary from the "Background" section of the California Court of Appeal's opinion on direct review as a fair and accurate summary of the evidence presented at trial. (Lodged Doc. 7 at 2-5).

On August 31, 2010, Miguel Pedraza (hereinafter "petitioner's father" or "Miguel") and his live-in partner, Lorna Lualhati, drove in Lualhati's car, a beige Toyota, to pick up petitioner from a gas station and take him to the house in which he rented a room. During the drive, petitioner told Miguel he wanted to go to a storage unit that Miguel had rented, in order to pick something up. Miguel and petitioner's mother had rented the storage unit to store petitioner's possessions.

Miguel told petitioner they could not go there at that time, because the facility had closed for the day, but they made plans to go on another day.

The storage unit that Miguel rented was at A-1 Storage in Irwindale. There are 999 units at the facility; Miguel rented unit 824. To enter or exit the facility, a renter must enter on a keypad a seven-digit code specific to his or her unit, which opens a gate. The renter may then drive into the facility and to his or her unit, which is secured by a padlock. Anytime someone enters or exits the facility, the time and the unit associated with the code entered on the keypad is automatically recorded on an activity log in the facility's computer system. The facility also has video cameras that record activity at the front entrance/exit and down each aisle of units.

The activity log shows that at 3:57 p.m. on September 3, 2010, someone entered the facility by entering the code for unit 824. The video recording associated with that time shows Lualhati's car, driven by Miguel, entering the facility and driving down the aisle to unit 824; it took about three minutes from the time the gate opened until the car got to the unit. Ten minutes after the car entered, the same car pulled up to the gate and honked.

Haide Sanchez, the manager of the facility, was working in the office at that time, along with another employee, Jose Chavez. Sanchez heard the honking but ignored it, thinking it was a new customer who forgot he had to enter the code on the keypad to open the gate. She then saw the car pulling up next to the office door, and saw a man she subsequently identified as petitioner exit the car from the driver's side; there was no one else in the car. Petitioner walked up to the door and asked Sanchez to let him out. She asked him how he got in, and told him he needed to use his code to get out. He said that he did not know the code, and again asked Sanchez to let him out, saying he needed to go. He continued to ask to be let out for a few minutes, then left the office. He got into the car, backed the car up, then rammed the car into the gate and drove off.

Ryan Moat, who was driving south on Irwindale Avenue near the facility, saw a car race out of the facility, and had to swerve to avoid being hit. He followed the car and called A-1 Storage, thinking that the person driving the car may have stolen something from the facility. He provided the person who answered the phone with the car's license plate number.

In the meantime, Maria Escarcega was in her truck, stopped at a stop sign when she heard a screeching sound. She looked in her rearview mirror and saw that a white Chrysler had been hit by a beige Toyota, and the Toyota was driving in her direction, but in the opposite lane of traffic. The Toyota made a right turn in front of her, hitting her car, and continued driving down Ramona Boulevard. Escarcega followed the Toyota, which was being driven by a man she subsequently identified as petitioner. As petitioner turned left onto Main Street, he lost control of the car, which came to a stop in front of a senior home. He got out of the car, jumped over the gate to the senior home, and went up the steps toward the roof.

Escarcega called 911 while she was following the car, and the police arrived within minutes after petitioner got out of the car. Officer Ruben Guerrero of the Baldwin Park Police Department was the first officer to respond. He spoke with Escarcega, as well as Lewas Dellgad. Dellgad was driving the first car that petitioner hit. He had been exiting a parking lot at 14519 Ramona Boulevard when petitioner crashed into the driver's side of his white rental car. He saw that a woman in a truck started to chase the car that hit him, and he followed it. He did not go fast, and by the time he arrived at the senior home (which was across from the police station), Officer Guerrero was already there. After Officer Guerrero spoke to him, the officer jumped over the fence to the senior home and searched the area. He found petitioner on the rooftop and arrested him for hit-and-run driving and vandalism.

///

4

1    In the meantime, Officer Diego Cornejo of the Irwindale Police Department
2    responded to a call of possible vandalism at A-1 Storage. When he arrived, Haide
3    Sanchez gave him the license plate number of the car that had rammed through the
4    gate about 20 minutes earlier. He ran the number, and determined the car was
5    registered to Lualhati. When the dispatcher told him that the car was involved in a
6    hit-and-run collision in Baldwin Park, Officer Cornejo took Sanchez to Baldwin
7    Park for a field identification of the suspect. Sanchez identified petitioner as the
8    person who drove the car through the gate at A-1 Storage.

9    Within approximately a half an hour after the police arrived at A-1 Storage,
10   one of the officers asked Jose Chavez to check to see if there was any damage to
11   any of the storage units at the facility. Chavez went up and down the aisles, and
12   saw that the door to unit 824 was open a little bit from the bottom. He opened it a
13   bit more, and a body "popped out." He immediately returned to the office and told
14   the police officer there.

15   Jill Licht, a senior criminalist with the Los Angeles Sheriff's Department,
16   was called to the scene at A-1 Storage to document and collect evidence. When
17   she got to unit 824, she saw that the door was lifted and the body of the deceased
18   victim, Miguel, was inside the unit. There were blood stains on the ground, the
19   walls, and some of the items inside, including a barbell or dumbbell.

20   Raffi Djabourian, a senior deputy medical examiner for the Los Angeles
21   County Department of Coroner, conducted an autopsy on Miguel's body. He
22   found there were 10 lacerations on Miguel's head and face, internal head trauma,
23   and numerous skull fractures that were consistent with being hit in the head with a
24   dumbbell or other heavy object, as well as wounds on his right hand and the inside
25   of his left forearm that were consistent with defensive wounds. He concluded that
26   the injuries had to have been caused by at least five, and probably six, blows to the
27   head, and that the cause of death was blunt head trauma.
28   ///

5

1

## IV.   STANDARD OF REVIEW

2    This Court may entertain a petition for writ of habeas corpus on "behalf of a

3    person in custody pursuant to the judgment of a State court only on the ground that

4    he is in custody in violation of the Constitution or laws or treaties of the United

5    States." 28 U.S.C. § 2254(a).  A federal court may not grant an application for

6    writ of habeas corpus on behalf of a person in state custody with respect to any

7    claim that was adjudicated on the merits in state court proceedings unless the

8    adjudication of the claim:  (1) "resulted in a decision that was contrary to, or

9    involved an unreasonable application of, clearly established Federal law, as

10   determined by the Supreme Court of the United States"; or (2) "resulted in a

11   decision that was based on an unreasonable determination of the facts in light of

12   the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[1]

13   In applying the foregoing standards, federal courts look to the last reasoned

14   state court decision.  See Smith v. Hedgpeth, 706 F.3d 1099, 1102 (9th Cir.), cert.

15   denied, 133 S. Ct. 1831 (2013).  "Where there has been one reasoned state

16   judgment rejecting a federal claim, later unexplained orders upholding that

17   judgment or rejecting the same claim rest upon the same ground." Ylst v.

18   Nunnemaker, 501 U.S. 797, 803 (1991) (cited with approval in Johnson v.

19   Williams, 133 S. Ct. 1088, 1094 n.1 (2013)); Cannedy v. Adams, 706 F.3d 1148,

20   1158 (9th Cir. 2013) (it remains Ninth Circuit practice to "look through" summary

21   denials of discretionary review to the last reasoned state-court decision), as

22   amended on denial of rehearing, 733 F.3d 794 (9th Cir. 2013), cert. denied, 134 S.

23   Ct. 1001 (2014).

24   _____

25   [1]When a federal claim has been presented to a state court and the state court has denied
relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

26   of any indication or state-law procedural principles to the contrary.  Harrington v. Richter, 562
U.S. 86, 99 (2011); see also Johnson v. Williams, 133 S. Ct. 1088, 1094-96 (2013) (extending

27   Richter presumption to situations in which state court opinion addresses some, but not all of

28   defendant's claims).

6

However, to the extent no such reasoned opinion exists, courts must conduct an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law, and consequently, whether the state court's decision was objectively unreasonable. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000), abrogated on other grounds, Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); see also Harrington v. Richter, 562 U.S. 86, 98 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."); Cullen v. Pinholster, 563 U.S. 170, 187 (2011) ("Section 2254(d) applies even where there has been a summary denial.") (citation omitted).

When it is unclear whether deference under the foregoing standards applies, federal habeas courts can deny writs of habeas corpus under Section 2254 by engaging in a *de novo* review. Berghuis v. Thompkins, 560 U.S. 370, 390 (2010). When it is clear that the state court has not decided an issue on the merits, or when a state court's adjudication of a claim on the merits results in a decision contrary to or involving an unreasonable application of clearly established federal law or is based on an unreasonable determination of the facts, review is also *de novo*. See Cone v. Bell, 556 U.S. 449, 472 (2009); Panetti v. Quarterman, 551 U.S. 930, 953 (2007); Hurles v. Ryan, 752 F.3d 768, 778 (9th Cir.), cert. denied, 135 S. Ct. 710 (2014).

When a claim presented in a federal habeas petition is unexhausted, a federal habeas court may deny relief when it is perfectly clear that the applicant does not raise even a colorable federal claim. See Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005), cert. denied, 546 U.S. 1172 (2006).

## V.    DISCUSSION

Petitioner claims he is entitled to federal habeas relief because: (1) the trial court failed adequately to instruct the jury on second degree murder and voluntary

manslaughter based upon heat of passion or provocation (Ground One); and (2) the evidence of premeditation and deliberation was insufficient, such that petitioner's first degree murder conviction should be reduced to second degree murder or voluntary manslaughter (Ground Two).  Petitioner is not entitled to federal habeas relief on either of his claims.

### A.   Petitioner's Instructional Error Claim Does Not Merit Federal Habeas Relief

Petitioner contends that he was prejudiced by the trial court's failure to instruct the jury on voluntary manslaughter and the effect of provocation on the degree of murder.  The California Court of Appeal – the last state court to issue a reasoned decision addressing such claim – rejected the claim on the merits. (Lodged Doc. 7 at 7-8).[2]  Petitioner is not entitled to federal habeas relief on this basis.

### 1.   Legal Background

Under California law, murder is the unlawful killing of a human being with malice aforethought.  Cal. Penal Code § 187; People v. Lasko, 23 Cal. 4th 101, 107, cert. denied, 531 U.S. 951 (2000).  All murders that are not of the first degree are of the second degree.  Cal. Penal Code § 189; see also People v. Knoller, 41 Cal. 4th 139, 151 (2007) (noting second degree murder lacks "additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder") (citation omitted).

---

[2]Although respondent argues that petitioner failed to exhaust the instant claim, this Court disagrees as the petition for review filed by petitioner in the California Supreme Court argues: "Failure to give adequate instructions on lesser offenses prevents the jury from considering the legal implications of all the evidence in the case, and curtails the defendant's right to jury trial on all issues presented by the evidence, in violation of the Sixth And Fourteenth Amendment of the United States Constitution . . . "  (Lodged Doc. 8 at 16-17).  In any event, even assuming petitioner's instant claim had not been exhausted, the Court would nonetheless exercise its discretion to address it as it is perfectly clear that the claim is not colorable.  See Cassett, 406 F.3d at 623-24.

1    Second degree murder is a lesser included offense of first degree murder.

2    People v. Taylor, 48 Cal. 4th 574, 623 (2010), cert. denied, 562 U.S. 1013 (2010).

3    To reduce a murder to second degree murder, premeditation and deliberation may

4    be negated by heat of passion arising from provocation.  See People v. Carasi, 44

5    Cal. 4th 1263, 1306 (2008), cert. denied, 556 U.S. 1209 (2009); People v.

6    Hernandez, 183 Cal. App. 4th 1327, 1332 (2010) (citation omitted).  If the

7    provocation would not cause an average person to experience deadly passion but it

8    precludes the defendant from subjectively deliberating or premeditating, the crime

9    is second degree murder.  People v. Hernandez, 183 Cal. App. 4th at 1332

10   (citation omitted).

11   Manslaughter is a lesser included offense of murder.  Cal. Penal Code

12   § 192; People v. Thomas, 53 Cal. 4th 771, 813 (2012), cert. denied, 133 S. Ct. 380

13   (2012).  Voluntary manslaughter is the unlawful killing of a human being without

14   malice upon a sudden quarrel or heat of passion.  Cal. Penal Code § 192(a).  Heat

15   of passion arises if, at the time of the killing, the reason of the accused was

16   obscured or disturbed by passion to such an extent as would cause the ordinarily

17   reasonable person of average disposition to act rashly and without deliberation and

18   reflection, and from such passion rather than from judgment.  People v. Beltran, 56

19   Cal. 4th 935, 942 (2013) (citation and internal quotation marks omitted).  Heat of

20   passion, then, is a state of mind caused by legally sufficient provocation that

21   causes a person to act, not out of rational thought but out of unconsidered reaction

22   to the provocation.  Id.  Adequate provocation must be affirmatively demonstrated.

23   People v. Thomas, 53 Cal. 4th at 813 (citation and quotation marks omitted).  In

24   such cases, adequate provocation is said to negate the "malice" element of a

25   murder charge.  People v. Milward, 52 Cal. 4th 580, 587 (2011) (citation omitted);

26   see also People v. Rios, 23 Cal. 4th 450, 467 (2000) ("[A]s California law has long

27   specified, where a killing was intentional and unlawful, provocation justifies a

28   voluntary manslaughter conviction not because provocation is an additional

element of that crime, but because it negates the malice element of the greater offense of murder.").

California trial courts are required to instruct the jury on a lesser included offense if there is "evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense." People v. Shockley, 58 Cal. 4th 400, 403 (2013), as modified on denial of reh'g, (Feb. 26, 2014); People v. Souza, 54 Cal. 4th 90, 116 (2012) (California trial courts are obligated to instruct the jury "on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser."), cert. denied, 133 S. Ct. 1499 (2013).

On federal habeas review, claims of error concerning state jury instructions are generally matters of state law that are not cognizable on federal habeas review. See Gilmore v. Taylor, 508 U.S. 333, 343 (1993); see also Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  Federal habeas relief based on a claim of instructional error is available only when a petitioner demonstrates that "[an] ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Estelle v. McGuire, 502 U.S. 62, 72 (1991); see also Waddington v. Sarausad, 555 U.S. 179, 191 (2009) (same) (citations omitted).  A challenged instruction must be evaluated in the context of other instructions and the trial record as a whole, not in artificial isolation.  Waddington, 555 U.S. at 191 (citations omitted).

If a jury instruction is ambiguous, inconsistent or otherwise deficient, it will violate due process only when a reasonable likelihood exists that the jury has applied the challenged instruction in a manner that violates the Constitution. Waddington, 555 U.S. at 190-91 (quotation marks, internal quotation marks and citations omitted); Estelle, 502 U.S. at 72.  For example, in a criminal trial, a jury instruction violates due process if it fails to give effect to the requirement that the prosecution prove every element of an offense.  Middleton v. McNeil, 541 U.S.

433, 437 (2004) (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 520-21 (1979)).  It is not enough that there is some "slight *possibility*" that the jury misapplied the instruction.  <u>Weeks v. Angelone</u>, 528 U.S. 225, 236 (2000) (emphasis in original).

"An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977).  Thus, a petitioner has an "especially heavy burden" to establish a due process violation in such circumstances.  <u>Id.</u>

Where a state court has rejected an instructional error claim on the merits, federal habeas relief may be granted only if the state court's application of the foregoing law was objectively unreasonable.  <u>Waddington</u>, 555 U.S. at 190 (citations omitted).  Since the due process standard applied to claims of instructional error is a very general one, the range of possible reasonable applications of that standard is substantial, and thus significant deference is given to state court adjudications of such claims.  <u>See generally</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004) (in assessing whether state court's adjudication of claim involved unreasonable application of clearly established law, court must consider legal rule's specificity; the more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations); <u>see, e.g.</u>, <u>Moncada v. Smalls</u>, 2012 WL 3150596, *6 (C.D. Cal. Mar. 22, 2012) (affording court of appeal's adjudication of instructional error claim "considerabl[e] leeway" since the governing Supreme Court rule for analyzing such claims is "particularly general"), <u>report and recommendation adopted</u>, 2012 WL 3149150 (C.D. Cal. July 31, 2012).

In addition, even if a trial court's jury instructions are constitutionally deficient, this Court cannot grant habeas relief for such a trial-type error unless petitioner suffered prejudice under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).  <u>Deck v. Jenkins</u>, 768 F.3d 1015, 1021-22 (9th Cir. 2014) (citing <u>Fry v. Pliler</u>, 551 U.S. 112, 120 (2007); <u>Brecht</u>, 507 U.S. at 637); <u>see also</u> <u>Hedgpeth v.</u>

1  Pulido, 555 U.S. 57, 61-62 (2008) (per curiam) (applying Brecht prejudice

2  standard to habeas claims of instructional error) (citing Brecht, 507 U.S. at 623);

3  Hanna v. Riveland, 87 F.3d 1034, 1038 (9th Cir. 1996), as amended on denial of

4  reh'g, (Aug. 21, 1996) (noting "constitutionally deficient jury instruction is a

5  trial-type error").

6  **2.   Discussion**

7  In petitioner's case, the trial court instructed the jury on first and second

8  murder with CALCRIM 520[3] and 521[4] (CT 115-17), but did not instruct the jury

---

[3]The trial court instructed the jury:

> To prove that the defendant is guilty of [murder], the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person;[¶] AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought.

> There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with *express malice* if he unlawfully intended to kill. [¶] The defendant acted with *implied malice* if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life.

> Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time. [¶] If you decide that the defendant committed murder, you must then decide whether it is murder of the first or second degree.

(CT 115-16 [CALCRIM 520]).

[4]The trial court instructed the jury:

> The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted *willfully* if he intended to kill. The defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if he decided to kill before completing the act that caused death.

(continued...)

on voluntary manslaughter or the effect of provocation on the degree of murder (*i.e.*, that provocation that precludes a defendant from subjectively deliberating or premeditating reduces a homicide to second degree murder).  Petitioner, who claims he was prejudiced by such omission, is not entitled to federal habeas relief on the asserted ground.

First, to the extent petitioner contends that the trial court's failure to instruct the jury on voluntary manslaughter and the effect of provocation on the degree of murder violated state law, his claim is not cognizable on federal habeas review.  See Estelle, 502 U.S. at 71-72 ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); Van Pilon v. Reed, 799 F.2d 1332, 1342 (9th Cir. 1986) (claims that merely challenge correctness of jury instructions under state law cannot reasonably be construed to allege a deprivation of federal rights) (citation omitted).

Second, to the extent petitioner contends that the trial court was required to give the jury instructions in issue because voluntary manslaughter and second degree murder were lesser included offenses of first degree murder, he again fails

---

[4](...continued)

The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated.  The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances.  A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated.  On the other hand, a cold, calculated decision to kill can be reached quickly.  The test is the extent of the reflection, not the length of time.

The requirements for second degree murder based on express or implied malice are explained in [CALCRIM 520].

The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than second degree murder.  If the People have not met this burden, you must find the defendant not guilty of first degree murder.

(CT 117 [CALCRIM 521]).

to state a cognizable claim.  See 28 U.S.C. § 2254(a).  The failure of a state court to instruct on a lesser included offense in a non-capital case, such as this one, fails to present a federal constitutional question.  Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam) (quoting Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir.), cert. denied, 469 U.S. 838 (1984)), cert. denied, 534 U.S. 839 (2001); see also Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) (failure of state trial court to instruct on lesser included offenses in non-capital case does not present federal constitutional question).[5]

Third, even assuming the failure to instruct the jury on voluntary manslaughter or further to instruct the jury on second degree murder raised a cognizable constitutional claim, petitioner is not entitled to federal habeas relief because there is no clearly established United States Supreme Court authority which requires that such instructions be given.  See 28 U.S.C. § 2254(d)(1); Beck v. Alabama, 447 U.S. 625, 638 & n.7 (1980) (holding that failure to instruct on lesser included offense in a capital case is constitutional error if there was evidence to support the instruction but expressly reserving "whether the Due Process Clause would require the giving of such instructions in a non-capital case"); Preciado v. Runnels, 343 Fed. Appx. 234, 236 (9th Cir. 2009) (no clearly established requirement that courts give lesser included offense instruction in non-capital cases), cert. denied, 558 U.S. 1123 (2010); Huynh v. Hernandez, 2007 WL 186307 (9th Cir. Jan. 22, 2007) (as there is no clearly established Supreme Court law that requires giving lesser included offense instruction in non-capital case, court foreclosed from granting habeas relief on state petitioner's claim that trial court's failure to instruct the jury on lesser included offense deprived him of due

---

[5]To find a constitutional right to a lesser included offense instruction in this non-capital case would require the application of a new rule of law, an exercise this Court may not undertake in a habeas proceeding.  Teague v. Lane, 489 U.S. 288 (1989); Solis, 219 F.3d at 929 (habeas relief for failure to instruct on lesser included offense in non-capital case barred by Teague because it would require the application of a new constitutional rule).

process).  Accordingly, petitioner's claim, to the extent predicated upon the trial court's failure to instruct the jury on lesser included offenses, is not cognizable on federal habeas review and should be denied on that basis.

Finally, even if petitioner's claim is arguably cognizable on federal habeas review as a potential denial of due process, it fails because an instruction on voluntary manslaughter and the effect of provocation on the degree of murder were not required under state law, and accordingly, petitioner cannot meet his "especially heavy burden" to demonstrate that its omission prejudiced him so as to violate due process.

Here, the Court of Appeal reasonably concluded that substantial evidence did not support giving such instructions because of the absence of any evidence of provocation of any kind.  After summarizing essentially the same California legal principals discussed in Part VA1, supra, the Court of Appeal explained that the instructions in issue were not required because "there was no evidence of any provocation by Miguel," noting that petitioner's "trial counsel admitted as much during discussions the trial court had with the parties regarding the jury instructions."  (Lodged Doc. 7 at 7) (alluding to RT 697).  The Court of Appeal elaborated:

> During those discussions, the court asked counsel what
> evidence there was to show that there was some provocation such that
> [petitioner's] conduct was a reasonable reaction to it.  Counsel
> responded that, given the short amount of time during which the
> murder took place, it was obvious that something happened, and there
> must have been some reason for it.  But she admitted, "We don't
> know what the reason is.  That is absent from the record."  [RT 697].
> She was correct.  Because there was no evidence about what caused
> [petitioner] to hit Miguel in the head with a dumbbell, a juror could
> find that Miguel provoked [petitioner's] reaction only through

15

1

speculation. But speculation is not an appropriate basis for

2

instructions since it is not evidence. [Citation]. Therefore, the trial

3

court did not err by omitting instructions on voluntary manslaughter

4

or the effect of provocation on the degree of murder.

5

(Lodged Doc. 7 at 8) (internal quotation marks and citation omitted).

6

The Court of Appeal's conclusions are well-supported by the record and

7

governing law. Since petitioner cannot demonstrate that the omission of the

8

instructions on voluntary manslaughter and the effect of provocation on the degree

9

of murder violated state law, let alone meet his "especially heavy burden" to

10

demonstrate that their omission prejudiced him so as to violate due process, he

11

fails to show that the Court of Appeal's rejection of the instant claim was

12

objectively unreasonable.

13

In sum, the Court of Appeal's rejection of the instant claim was not contrary

14

to, or an objectively unreasonable application of clearly established federal law.

15

Nor was it based upon an unreasonable determination of the facts in light of the

16

evidence presented. Accordingly, petitioner is not entitled to federal habeas relief

17

on this basis.

18

**B.      Petitioner's Sufficiency of the Evidence Claim Does Not Merit**

19

**          Federal Habeas Relief**

20

Petitioner contends that there was insufficient evidence of premeditation

21

and deliberation to support his conviction for first degree murder. The California

22

Court of Appeal – the last state court to issue a reasoned decision addressing such

23

claims – rejected the claims on the merits. (Lodged Doc. 7 at 8-10). Based upon

24

an independent review of the record, this Court agrees with the California Court of

25

Appeal and concludes that petitioner is not entitled to federal habeas relief on the

26

claim.

27

///

28

///

1          **1.     Pertinent Law**

2          On habeas review, a court's inquiry into the sufficiency of the evidence is

3   subject to two layers of judicial deference. Coleman v. Johnson, 132 S. Ct. 2060,

4   2062 (2012) (per curiam). First, on direct appeal, "it is the responsibility of the

5   jury – not the court – to decide what conclusions should be drawn from evidence

6   admitted at trial. A reviewing court may set aside the jury's verdict on the ground

7   of insufficient evidence only if no rational trier of fact could have agreed with the

8   jury." Id. (quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam)); see

9   Jackson v. Virginia, 443 U.S. 307, 319 (1979) (standard of review on sufficiency

10  of the evidence claim is whether, "after viewing the evidence in the light most

11  favorable to the prosecution, *any* rational trier of fact could have found the

12  essential elements of the crime beyond a reasonable doubt") (emphasis in

13  original); Coleman, 132 S. Ct. at 2065 ("[T]he only question under Jackson is

14  whether [the jury's] finding was so insupportable as to fall below the threshold of

15  bare rationality.").

16         Second, on habeas review, "a federal court may not overturn a state court

17  decision rejecting a sufficiency of the evidence challenge simply because the

18  federal court disagrees with the state court. The federal court instead may do so

19  only if the state court decision was 'objectively unreasonable.'" Coleman, 132 S.

20  Ct. at 2062, 2065 (state court determination that jury's finding was not so

21  insupportable as to fall below the threshold of bare rationality is entitled to

22  considerable deference on habeas review) (citations omitted); see Juan H. v. Allen,

23  408 F.3d 1262, 1274-75 (9th Cir. 2005) (as amended) (federal habeas relief may

24  be afforded on sufficiency of the evidence claim only if state court's adjudication

25  of the claim involved unreasonable application of Jackson to the facts of the case),

26  ///

27  ///

28  ///

1  <u>cert. denied</u>, 546 U.S. 1137 (2006).[6]  Sufficiency of the evidence claims are judged

2  by the elements defined by state law.  <u>Jackson</u>, 443 U.S. at 324 n.16.  Evidence

3  must be considered in the light most favorable to the prosecution.  <u>Id.</u> at 319.

4  Circumstantial evidence and the inferences drawn therefrom may be sufficient to

5  sustain a conviction.  <u>Ngo v. Giurbino</u>, 651 F.3d 1112, 1114-15 (9th Cir. 2011).

6       As noted above, California law defines first degree murder as an unlawful

7  killing with malice aforethought, premeditation, and deliberation.  Cal. Penal Code

8  §§ 187(a), 189; <u>People v. Hernandez</u>, 183 Cal. App. 4th at 1332.  In determining

9  whether a crime was premeditated, courts assess whether the evidence supports an

10  inference that a crime was "the result of preexisting reflection rather than

11  unconsidered or rash impulse."  <u>People v. Hughes</u>, 27 Cal. 4th 287, 370 (2002)

12  (citation omitted).  "Premeditated" means "considered beforehand," and

13  "deliberate" means "formed or arrived at or determined upon as a result of careful

14  thought and weighing of considerations for and against a proposed course of

15  action."  <u>People v. Mayfield</u>, 14 Cal. 4th 668, 767 (1997) (internal quotations and

16  citation omitted), <u>cert. denied</u>, 522 U.S. 839 (1997).  "The process of

17  premeditation and deliberation does not require any extended period of time."

18  <u>People v. Hughes</u>, 27 Cal. 4th at 371 (citation and quotation marks omitted).  "The

19  true test is not the duration of time as much as it is the extent of the reflection.

20  Thoughts may follow each other with great rapidity and cold, calculated judgment

21  may be arrived at quickly[.]"  <u>Id.</u> (citation and quotation marks omitted).

22       In examining whether the evidence is sufficient to show that a

23       defendant premeditated, a reviewing court may consider a tripartite

24       framework – (1) planning activity, (2) motive, and (3) manner of the

25       killing – in determining whether such intent may be inferred from the

26  _____

27       [6]The California standard for determining the sufficiency of evidence to support a
conviction is identical to the federal standard enunciated in <u>Jackson</u>.  <u>People v. Johnson</u>, 26 Cal.

28  3d 557, 576 (1980).

1       trial record.  [Citation].  This framework does not establish an

2       exhaustive list of required evidence which excludes all other types

3       and combinations of evidence that may support a jury's finding of

4       premeditation [citation], nor does it require that all three elements

5       must be present to affirm a jury's conclusion that premeditated murder

6       was intended.

7 People v. Felix, 172 Cal. App. 4th 1618, 1626 (2009) (citations omitted).

8            **2.**     **Sufficient Evidence Supported the Jury's Finding That the**

9            **Murder Was Deliberate and Premeditated**

10       Petitioner contends that there is insufficient evidence of premeditation and

11 deliberation to support his conviction for first degree murder, but essentially just

12 asks this Court to reweigh the evidence.  On habeas review, the Court cannot

13 reevaluate the evidence or draw new inferences.  Cavazos v. Smith, 132 S. Ct. 2, 7

14 n.* (2011) (per curiam) (reweighing facts precluded by Jackson); United States v.

15 Nevils, 598 F.3d 1158, 1170 (9th Cir. 2010) (in assessing sufficiency of the

16 evidence claim, it is not court's function to reweigh the evidence) (citation and

17 quotation marks omitted).  The Court must presume that the jury rejected

18 petitioner's interpretations of such evidence and resolved any ambiguities in favor

19 of its guilty verdicts.  Jackson, 443 U .S. at 319 (court must view evidence "in the

20 light most favorable to the prosecution"); see Bruce v. Terhune, 376 F.3d 950, 957

21 (9th Cir. 2004) (federal habeas court must presume trier of fact resolved conflicts

22 in favor of prosecution).  The only issue is whether it was objectively reasonable

23 for the California courts to determine that a rational trier of fact could have found

24 beyond a reasonable doubt that petitioner, with premeditation and deliberation,

25 murdered his father.  In this case, such question must be answered in the

26 affirmative.

27       First, the Court of Appeal reasonably determined that the evidence of

28 planning was sufficient to support an inference of premeditation.  (Lodged Doc. 7

at 9).  The Court of Appeal explained:   "In the present case, there was evidence from which a reasonable jury could conclude that [petitioner] had planned the murder.  Lualhati testified that Miguel and [petitioner] made plans to go to the storage unit on August 31, 2010, three days before the murder.  She also testified that the items in the storage unit belonged to [petitioner].  The jury reasonably could infer that [petitioner] knew that his dumbbell probably was in the storage unit, and asked Miguel to take him there so he could commit the murder in the unit and out of the view of witnesses."  (Lodged Doc. 7 at 9) (citing People v. Mayfield, 14 Cal. 4th at 768 (fact that defendant took victim to location where no witnesses were likely to observe him suggests planning).  This Court agrees.

Second, the Court of Appeal reasonably determined that the "manner of killing also supports the jury's findings of premeditation and deliberation." (Lodged Doc. 7 at 9-10).  As the Court of Appeal explained:  "The deputy medical examiner testified that Miguel's injuries were caused by at least five, and probably six, blows to the head with a heavy object.  A reasonable jury could conclude that, by hitting Miguel *repeatedly* in the most vulnerable part of his body, [petitioner] made a cold, calculated decision to kill his father."  (Lodged Doc. 7 at 9-10) (emphasis original).  Cf. People v. Silva, 25 Cal. 4th 345, 369 (2001) ("The manner of killing – multiple shotgun wounds inflicted on an unarmed and defenseless victim who posed no threat to defendant – is entirely consistent with a premeditated and deliberate murder"); People v. Hindmarsh, 185 Cal. App. 3d 334, 348 (1986) (rejecting contention that killing may not have been deliberate and premeditated where head injuries produced by multiple severe blows with blunt and clawed hammer-like instrument).

Although the Court of Appeal did not suggest that there was evidence of motive to support a finding of premeditation and deliberation, under California law, when manner of killing evidence strongly suggests premeditation and deliberation, that evidence is enough, by itself, to sustain a conviction for first

1  degree murder.  Davis v. Woodford, 384 F.3d 628, 640 (9th Cir. 2004), cert.
2  dismissed, 545 U.S. 1165 (2005) (citation omitted).

3       In sum, the evidence presented at petitioner's trial was more than sufficient
4  to enable a rational trier of fact to conclude that he killed his father with
5  premeditation and deliberation.  The California Court of Appeal's rejection of this
6  insufficiency of the evidence claim was not contrary to, or an objectively
7  unreasonable application of, clearly established federal law.  Nor was it based on
8  an unreasonable determination of the facts in light of the evidence presented.
9  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

10  **VI.   ORDER**

11       IT IS THEREFORE ORDERED:  (1) the Petition is denied and this action is
12  dismissed with prejudice; and (2) Judgment shall be entered accordingly.[7]
13  DATED:  March 3, 2016

14

15                                  /s/

16                                 Honorable Jacqueline Chooljian
                               UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21  _____

22       [7]Petitioner's request for an evidentiary hearing (Traverse at 3, 9) is denied because he has
not alleged any material fact which he did not have a full and fair opportunity to develop in state
23  court and which, if proved, would show his entitlement to habeas relief.  See Cullen v.
Pinholster, 563 U.S. 170, 180-81 (2011) (scope of record for 28 U.S.C. § 2254(d)(1) inquiry
24  limited to record that was before state court that adjudicated claim on the merits); Schriro v.
Landrigan, 550 U.S. 465, 474 (2007) (if record refutes applicant's factual allegations or
25  otherwise precludes habeas relief, court not required to hold evidentiary hearing); Gandarela v.
Johnson, 286 F.3d 1080, 1087 (9th Cir. 2002) (evidentiary hearing properly denied where the
26  petitioner "failed to show what more an evidentiary hearing might reveal of material import"),
cert. denied, 537 U.S. 1117 (2003).
27

28